IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| FAIRFIELD INDUSTRIES INCORPORATED <br><br> v. <br><br> WIRELESS SEISMIC, INC. | § <br> § <br> § <br> §     Case No. 2:13-CV-903-JRG-RSP <br> § <br> § <br> § |

## **MEMORANDUM ORDER**

Before the Court is Wireless Seismic, Inc.'s ("Wireless Seismic") Motion to Transfer Venue (Dkt. 12, filed February 7, 2014). Wireless Seismic argues the Southern District of Texas is a clearly more convenient forum for this case. Plaintiff Fairfield Industries, Inc. ("Fairfield") opposes transfer. For the reasons set forth below, the motion is GRANTED. It is ORDERED that this case be TRANSFERRED to the Southern District of Texas.

## **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Fairfield Industries, Inc. ("Fairfield") is a Delaware corporation with its principal place of business in Sugar Land, Texas. (Dkt. 1). On November 1, 2013, Fairfield filed this suit against Wireless Seismic, Inc. ("Wireless Seismic"), a Delaware corporation with its principal place of business in Sugar Land, Texas. (Dkt. 1, 9). In its original complaint, Fairfield accused Wireless Seismic of infringing U.S. Patent No. 7,124,028 ("the '028 Patent"), U.S. Patent No. 7,983,847 ("the '847 Patent"), and U.S. Patent No. 8,296,068 ("the '068 Patent"). (Dkt. 1). On September 16, 2014, Fairfield filed an amended complaint that further accused Wireless Seismic of infringing U.S. Patent No. 8,644,111 (the '111 Patent"). Wireless Seismic moves the Court pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Southern District of Texas. (Dkt. 12).

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly

more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

Timely motions to transfer venue "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## DISCUSSION

### A. Proper Venue

Neither party disputes that venue is proper either in the Eastern District of Texas or the Southern District of Texas as to Fairfield and Wireless Seismic.

### B. Private Interest Factors

#### 1. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* Wright & Miller, *Federal Practice and Procedure* § 3851. "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key

witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343–44.

Wireless Seismic argues the Southern District of Texas is more convenient for both party and third-party witnesses. *See* (Mot. at 9) ("[A]ll related witnesses are located within 25 miles of the Southern District of Texas, Houston Division."). With regard to the Houston-area witnesses, Wireless Seismic identifies: (i.) its headquarters as Sugar Land, Texas (Mot. at 2); (ii.) Fairfield's principle place of business as Sugar Land, Texas (*Id*.); (iii.) the development of the accused wireless seismic data transmission system as occurring within Sugar Land, Texas (*Id*.); (iv.) inventors of the patents-in-suit as located in the Southern District (*Id*. at 2–3); and (v.) ION Geophysical[1] as headquartered in Houston, Texas. (*Id*. at 3).

For the Houston-based witnesses identified, Fairfield does not appear to dispute that the Southern District of Texas is a more convenient forum than the Eastern District. (Response at 9). Fairfield identifies several parties (both party and third-party witnesses) located outside the Houston area it deems relevant to the case. For example, Fairfield identifies Wireless Seismic's Colorado office (Response at 1), the inventors of the accused products who reside in California (*Id*. at 3), and Defendant's customers located "throughout the United States." (*Id*. at 4). Finally, Fairfield identifies a potential "use" of accused products within the Eastern District of Texas, naming the entity, "MicroSeismic." (*Id*.).

With regard to Wireless Seismic's Colorado office, Wireless Seismic sets forth evidence by way of the Elder Declaration indicating "[t]he entire hardware and embedded team resides in Wireless Seismic's Sugar Land office, where all of the related documentation is located." *See*

---

[1] Wireless Seismic identified ION Geophysical as a potential third-party. ION Geophysical is the successor-in-interest to Input/Output, Inc. For simplicity, the Court will refer to these entities interchangeably throughout this order as ION Geophysical.

(Elder Decl. ¶ 3, Dkt. 12-1) (relating to the RT 1000 and RT System 2 products). In contrast, Fairfield's reliance on potential witnesses or documentation in the Colorado office appears to be speculative at best. *See* (Response at 2) (arguing the fact that "other aspects" of the RT 1000 and RT System 2 products were developed in Colorado "makes it likely" that relevant evidence is located at [Wireless Seimic's] Colorado office."). Although it appears from the record *some* developmental aspects of the RT 1000 and RT System 2 products occurred in Colorado[2] (Elder Decl. ¶ 4, Dkt. 12-1), Wireless Seismic's representations by way of the Elder Declaration should adequately address Fairfield's concerns regarding potentially relevant documentation and witnesses as to these accused products.

With regard to the California-based inventors of the accused products, the cost of attendance of these witnesses would be roughly equal as between the Eastern District of Texas and the Southern District of Texas. Accordingly, this fact is neutral. Similarly, Fairfield's identification of Wireless Seismic's customers being geographically scattered across the United States neither favors, nor weighs against, transfer. Accordingly, this fact is neutral as to both parties as well.[3]

Finally, Fairfield identifies potential *use* of accused products in the Eastern District of Texas. *See* (Response at 4) (identifying an entity named MicroSeismic). However, Fairfield's own evidence supports greater ties of this particular entity to the Southern District of Texas. For example, an exhibit to Fairfield's Response explicitly identifies Houston, Texas as the headquarters for MicroSeismic. *See* (Ex. H, Dkt. 15-3) ("Headquartered in Houston, Texas,

---

[2] The Court notes that even assuming relevant witnesses or documents are located in Colorado, at best, this fact it neutral.

[3] Notably, although Fairfield cites a few specific areas of the country in which Wireless Seismic's customers are located, Fairfield fails to provide one such customer located in the Eastern District of Texas. (Response at 4).

MicroSeismic is the pioneering leader in monitoring microseismic activity using surface and near-surface seismic arrays during hydraulic fracturing activity."). It is logical to conclude that relevant witnesses and documents relating to any use of these devices are likely located at MicroSeismic's headquarters in Houston, Texas. This weighs in favor of transfer as well.[4]

Accordingly, evaluated as a whole, this factor weighs in favor of transfer.

### 2. Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

The parties do not dispute that both Fairfield and Wireless Seismic are located in the Southern District of Texas. (Mot. at 1; Response at 1). Further, Wireless Seismic's motion states that "all known relevant documents are . . . located in [the Southern District of Texas]." (Mot. at 4). Wireless Seismic further states "documents related to conception, infringement, and damages . . . are also located in the Southern District of Texas" and that third-party ION Geophysical documents relating to inventorship and ownership of the patents[5] are located in the Southern District. (*Id*. at 5). These all weigh strongly in favor of transfer.

For Fairfield's part, it identifies Wireless Seismic's Colorado office, the California-based inventors of the accused products, and customers of accused products as being located

---

[4] Indeed, it appears that MicroSeismic is the only specific example Fairfield identified with ties to the Eastern District, yet its own evidence supports the conclusion that most relevant witnesses and documentation are actually located in the Southern District of Texas.

[5] Although it appears the parties dispute Mr. Fisseler's employment role with ION Geophysical, the parties agree that Mr. Fisseler was employed by ION Geophysical and that he is a named inventor of the patents-in-suit.

throughout the entire United States. (Response at 6–7). As set forth in the previous section,[6] Wireless Seismic's Colorado office, the California-based inventors, and the geographically dispersed customers are all neutral facts as between the Eastern District and Southern District. Indeed, Fairfield does not appear to dispute that these facts render this factor, at best, neutral, if not "tip[ping] "slightly toward the Southern District." (Response at 7). Moreover, the only specific example Fairfield identifies with ties to the Eastern District is MicroSeismic, yet Fairfield's own evidence supports the conclusion that most relevant documents are located in the Southern District of Texas.

Accordingly, as a whole, the Court finds this factor weighs strongly in favor of transfer.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B). Similarly, the Court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a). Moreover, party witnesses do not require compulsory process for trial and are not given much weight in this factor. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

Wireless Seismic argues all identified third-parties to this suit are located within the Houston-area and, thus, "the Southern District of Texas has absolute subpoena over the likely

---

[6] *See supra*, Part B.1.

third party witnesses . . . ."[7] (Mot. at 7–8). Wireless Seismic, however, fails to identify other non-Texas-based potential third-parties such as those Fairfield identified. *See, e.g.*, (Response at 8) (discussing the California-based witnesses and parties located elsewhere throughout the United States). Neither court has subpoena power over these non-Texas-based witnesses. The Court agrees with Fairfield that this factor does not weigh in favor of transfer. (Response at 8).

Accordingly, the Court finds this factor neutral.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

Both parties argue that this factor is neutral. (Mot. at 9; Response at 10). The Court agrees and finds this factor to be neutral.

## C. Public Interest Factors

### 1. Local Interest in Having Localized Interests Decided at Home

This factor considers the interest of the locality of the chosen venue in having the case resolved there. *Volkswagen I*, 371 F.3d at 205–06. This consideration is based on the principle that "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation."

Wireless Seismic argues the Southern District of Texas has a local interest in this case because "this case centers on parties, proofs, and products located in the Houston area, the Southern District of Texas court and jurors in that district have a greater interest in adjudicating this dispute than this Court and its jurors." (Mot. at 10). Fairfield argues this factor is neutral, emphasizing a geographical scattering of potentially interested third-parties. *See, e.g.*, (Response

---

[7] Wireless Seismic makes this argument despite its identification of a Massachusetts–based attorney who it summarily dismissed as not possessing relevant information to Wireless Seismic's defenses. (Mot. at 7, n.3; Mot. at 8).

at 11–12) (referencing a California-based inventor of the accused products, Wireless Seismic's Colorado-based office, and the seismic exploration of the Barnett Shale).

With respect to the California- and Colorado-based witnesses, Fairfield has failed to identify a localized interest within the Eastern District of Texas. Moreover, with respect to the seismic exploration of the Barnett Shale, as noted earlier, the entity accused of using the alleged infringing devices—MicroSeismic—is actually headquartered in Houston, Texas.[8]

Both parties are located in the Southern District of Texas (Mot. at 1), the inventors of the patents-in-suit are located in the Southern District (*Id*. at 3), and third-party ION Geophysical—the former employer of named inventor Glenn Fisseler—is headquartered in Houston, Texas.[9] All of these weigh in favor of a strong localized interest in the Southern District of Texas.

Accordingly, the Court finds this factor weighs in favor of transfer to the Southern District of Texas.

### 2. Familiarity of the Forum With the Law that Will Govern the Case

Wireless Seismic argues this factor is neutral. *See* (Mot. at 10) ("Both the Southern District of Texas and the Eastern District of Texas are equally familiar with the patent law, rendering this factor neutral."). Fairfield argues this factor weighs against transfer. Fairfield appears to base this conclusion on the premise that the Southern District of Texas' familiarity with the patent laws is less than that of the Eastern District of Texas because the Southern District tried fewer patent cases over a five-year period. (Response at 11–12). The Court disagrees. The Court is confident in its sister district's ability to apply federal law in this case

---

[8] *See supra*, Part B.1.

[9] Again, though the parties dispute Mr. Fisseler's employment role with ION Geophysical, they agree Mr. Fisseler was employed by ION Geophysical and that he is a named inventor of the patents-in-suit.

equally, and in a fair and just manner. *See, e.g.*, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). Accordingly, the Court finds this factor to be neutral.

### 3. Administrative Difficulties Flowing From Court Congestion

Wireless Seismic argues this factor is neutral. Fairfield argues this factor weighs against transfer because (1) "the Southern District is less versed in patent law" and (2) the average time to trial in the Eastern District is nearly seven months shorter than in the Southern District." (Response at 10). The Court has already addressed Fairfield's concerns regarding the Southern District's ability to handle a patent case.[10] Regarding the average time to trial, the parties agree the time to trial is only slightly faster, on average, between the two. Accordingly, the Court finds this factor weighs slightly in favor of transfer.

### 4. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

Both Fairfield and Wireless Seismic agree that this factor is neutral. (Mot. at 10–11; Response at 12). The Court agrees and finds this factor to be neutral.

---

[10] *See supra*, Part C.2.

## CONCLUSION

A motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech, Inc.*, 566 F.3d at 1342 (Fed. Cir. 2009). After weighing the evidence as a whole, the Court finds that Wireless Seismic has met its burden. Specifically, the cost of attendance for willing witnesses, relative ease of access to sources of proof, and the local interest in having localized interests decided at home weigh heavily in favor of transfer. Not one factor weighs heavily against transfer.

For the foregoing reasons, Wireless Seismic's Motion to Transfer (Dkt. 12) is **GRANTED**. It is **ORDERED** that this case be **TRANSFERRED** to the Southern District of Texas.

**SIGNED this 26th day of September, 2014.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE